UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| METROPOLITAN SCHOOL DISTRICT OF PIKE TOWNSHIP, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:10-cv-1032-LJM-TAB |
| INDIANA STATE TEACHERS ASSOCIATION, ISTA INSURANCE TRUST, and ISTA ADMINISTRATIVE SERVICES CORPORATION, | ) ) ) ) ) | |
| Defendants. | ) | |

## **ORDER ON MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendants', Indiana State Teachers Association, ISTA Insurance Trust, and ISTA Administrative Services Corporation (collectively, "Defendants"), Motion for Summary Judgment on Plaintiff's, Metropolitan School District of Pike Township ("Pike"), civil RICO, 18 U.S.C. § 1962(c), suit premised on Defendants' alleged unlawful administration of Pike's employee prescription benefit plan. For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment [dkt. no. 21].

### **I. BACKGROUND**

Between 1998 and approximately June 2009, the ISTA Administrative Services Corporation ("ASC") has administered Pike's health care benefit plan (the "Plan") for non-managerial employees. The Pike Classroom Teachers' Association, a local affiliate of the Indiana State Teachers' Association ("ISTA"), collectively bargained for the Plan. Hunter

Decl. at Ex. A & B. The ISTA Insurance Trust is the funding vehicle through which the Plan provided health benefits. Foushee Decl. at ¶ 19. Between April 2007 and June 2009, ASC shared the administration of the Plan with United Healthcare ("UHC"). Foushee Decl. at ¶ 6; Byerly Decl. at ¶ 6. During that time, UHC was responsible for claims processing, while ASC remained responsible for all other aspects of the administration of the Plan. Foushee Decl. at ¶ 6; Byerly Decl. at ¶ 6.

The Plan covered Pike employees belong to the Pike Teachers' Association and certain other eligible participants and dependents. Byerly Decl. at Ex. A; Hunter Decl. at Ex. A. A summary plan description outlined the specific medical benefits provided under the Plan. Byerly Decl. at Ex. A. Among other benefits, Pike employees were entitled to benefits for covered prescription drugs, subject to a copayment. *See* Dkt. No. 22-5, Outpatient Prescription Drug Rider ("Rider"). The specific copayment varied depending upon the type of drug and how it was purchased. Id. at 7-9. Under the plan prescription drugs are classified as either "Tier 1," Tier 2," or "Tier 3." *Id.* Tier 1 drugs required no copayment, regardless of where they were purchased. *Id.* If Tier 2 or Tier 3 drugs were purchased from a mail-order pharmacy, the Plan provided that they were subject to a five dollar copayment. *Id.* at 9. However, Tier 2 or Tier 3 drugs were purchased from a retail pharmacy carried a copayment of twenty percent of the cost of the drug. *Id.* at 7-8.

In January 2010, Pike's employee benefits specialist, Kim Boston, sent an email to a UHC representative requesting a listing of all Pike employees who received specialty pharmacy drugs pursuant to a copayment "override." Tran Decl. at Ex. A. The UHC representative responded with a spreadsheet containing information spanning the period of April 2007 through June 2009. *Id.* at Ex. B. Ms. Boston noticed that the spreadsheet

2

included entries for people not employed by Pike and requested an explanation from the UHC representative. *Id.* at Ex. A. The UHC representative explained that UHC's record keeping system prevented it from being able to distinguish between participants in Pike's Plan and participants in other school districts' health plans, and that the inclusion of non-Pike health plan eligible individuals did not indicate that those individuals were receiving benefits under the Plan. *Id.*

## II. **STANDARD**

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating

that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

As a preliminary matter, the Court is professionally disappointed with the tone of incivility apparent in both Pike's and Defendants' submissions. *See, e.g.*, Pike Resp. at 19 ("Apparently sensing the tension between their purely factual arguments and the summary judgment standard, Defendants do toss in one paragraph of 'legal' argument."); Defendants' Reply at 7 ("In these circumstances, Pike's attempt to fend off summary judgment by carping that the First Callahan Declaration's authentication of these documents includes hearsay not only is meritless; it constitutes bad faith."). Courts encourage skilled attorney advocacy, but the parties' respective combative approaches do not further this objective.

Further, the Court is required to take allegations of bad faith very seriously. *See Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir. 1986) ("We take Rule 11 and its counterpart Fed. R. App. P. 38 seriously and expect district judges, lawyers, and litigants to do the same."). The Court suggests that if either party intends that the Court consider the merit of such allegations, it do so by filing a separate motion outlining the basis in both fact and law for the allegation as well as the recovery sought. *See* Fed. R. Civ. P. 11; L.R. 7.1. Simply slipping an accusation of bad faith into a summary judgment motion does not aid the Court in resolving the conflict at hand and detracts from the substantive argument contained within the motion. Courts expect civility and professionalism from attorneys litigating cases before them. *See Martinez v. Univ. of Ill.*, No. 98 C 5043, 1999 U.S. Dist. LEXIS 11967, at *2 (N.D. Ill. Jul. 30, 1999) (Shadur, J.) (noting increased concern in the profession regarding the loss of civility and the "growth of 'give no quarter' litigation tactics"); *IP Innovation L.L.C. v. Thomson, Inc.*, No. 1:03-cv-0216-JDT-TAB, 2004 U.S. Dist. LEXIS 6290, at *6-*7 (S.D. Ind. Apr. 8, 2004) (Tinder, J.); *see also* FINAL REPORT

OF THE COMMITTEE ON CIVILITY OF THE SEVENTH FEDERAL JUDICIAL CIRCUIT, *available at* www.ca7.uscourts.gov/civility.pdf.

### A. Admissibility of Defendants' Supporting Evidence

Pike argues that Defendants rely almost entirely on inadmissible evidence in support of their Motion for Summary Judgment. Pike states that the declarations Defendants rely upon are not made based upon personal experience, are composed of inadmissible hearsay, and contain conclusory statements and, therefore, may not be considered by the Court. Indeed, affidavits and declarations used to support a summary judgment motion must be made on "personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Specifically, Pike asserts that Douglas Callahan's declaration, which describes communications between a UHC representative, Loc Tran, and Ms. Boston is inadmissible hearsay. In their motion for summary judgment, Defendants rely upon the Callahan Affidavit in order to authenticate and describe the email communications between Mr. Tran and Ms. Boston. Defendants respond to Pike's argument by submitting the declaration of Mr. Tran describing and authenticating the same communications. Accordingly, the Court will rely upon Mr. Tran's affidavit, against which Pike has raised no admissibility objections.

Next, Pike asserts that Michael Todd Foushee's declaration, which provides the record basis for all of Defendants' Statement of Undisputed Material Facts, is inadmissible because it is not based on personal knowledge. Specifically, Defendants rely upon Mr. Foushee's statements to explain how ASC administered the Plan. From 2003 through 2008, ASC employed Mr. Foushee as the Director of Operations and Chief Claims

6

Administrator. Foushee Decl. at ¶ 3. However, the lawsuit is premised on transactions that took place through 2009. *See* Compl. Accordingly, Pike argues, Mr. Foushee cannot testify based on personal knowledge about any claims that took place after his employment ended with ASC. Further, Pike argues that Mr. Foushee's declaration is conclusory. Mooting Pike's personal knowledge argument, Pike submits Tammy Byerly's affidavit as a supplement to Mr. Foushee's affidavit. Ms. Byerly also supervised the employees who handled eligibility and billing issues for Pike. Byerly Decl. at ¶ 3. Unlike Mr. Foushee, Ms. Byerly was employed at ASC through the end of ASC's business relationship with Pike. *Id.* Accordingly, the Court will consider both the statements of Mr. Foushee and those of Ms. Byerly as they relate to the time periods for which each would have personal knowledge. The Court will address Pike's arguments regarding the conclusory nature of Mr. Foushee's affidavit as the Court considers specific, contested portions of the Foushee affidavit.

### B. The Merits of Defendants' Motion for Summary Judgment

Pike asserts that there is a genuine issue of material fact as to whether Defendants permitted individuals who should not have been covered by the Plan to participate in it; whether Defendants improperly overrode copayments without Pike's approval to Pike's detriment in contravention of the Plan; and whether Defendants' bills to Pike included improper charges pursuant to those overrides. However, Pike has failed to produce any evidence suggesting that these facts are actually in dispute.

As to the issue of whether Defendants allowed ineligible individuals to participate in the Plan, Ms. Byerly's Declaration is competent evidence that a procedure was in place in order to ensure that only eligible individuals received benefits through the Plan and further

7

that ASC followed the procedure. Byerly Decl. at ¶¶ 13-18. Furthermore, Mr. Tran explains that the spreadsheet UHC provided to Pike with the names of ineligible individuals does not mean that Pike was paying for the benefits provided to those ineligible individuals. Tran Decl. at Ex. A. Instead, all ISTA groups were under the same policy number, and as a result, it was very difficult, if not impossible, for UHC's record-keeping system to separate all the ISTA participants' data into individual group employees. *Id.* Pike has put forward no evidence contesting either Ms. Byerly's Declaration or Mr. Tran's explanation on this point.

The parties agree that ASC did make overrides with respect to the prescription benefits provided by the Plan, but they disagree as to whether those overrides were "proper." The more appropriate concern is whether the contested overrides conform to the language of the Plan. In support of their contention that they are entitled to summary judgment, Defendants point to Pike's lack of evidence indicating that the overrides were improper. *See Green*, 17 F.3d at 201 & n.3 (7th Cir. 1994) (noting that for a party who does not bear the ultimate burden of proof on an issue, it is sufficient to point the court to a lack of evidence on that issue in order to prevail on summary judgment). Ms. Byerly's declaration indicates that policies were in place in order to ensure that the overrides were made only pursuant to the Plan documents. Byerly Decl. at ¶ 10. Although general, Ms. Byerly's statements are more than the bald assertion that no improper overrides occurred. Instead, they are sufficiently concrete to satisfy the Court that they are not impermissibly conclusory. Specifically, Ms. Byerly states several reasons that she would have personal knowledge of improper copayment overrides including record keeping policies, her supervisory position, and the fact that an ASC supervisor had to sign off on every override

8

executed by a UHC employee.  *Id.*; *see Hadley v. Cnty. of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

Furthermore, Ms. Boston, a Pike employee acting as Pike's Plan administrator after Defendants ceased serving in that capacity, "specifically requested that UHC put in overrides" for the same reason that ASC requested overrides, so that Plan subscribers could get mail order "specialty" prescriptions for a five dollar copayment.  Tran Decl. at ¶ 8 & Ex. B.  Indeed, it appears that the overrides ASC made as Plan administrator, just as those Ms. Boston requested as Plan administrator, were made in order to conform UHC's actions to the terms of the Plan and, accordingly, did not necessitate the specific approval of Pike because Pike already agreed to the terms of the Plan.  The Plan does not differentiate between "specialty" drugs and all other types of drugs.  *See* Rider at 5-9.  Instead, it premises copayment differentiations both on the "tier" category of the drug in question and the method by which the drug was purchased.  *Id.*  There is no evidence in the record to suggest that the overrides did anything other than conform the copayments required of plan subscribers to the terms of the Plan according to the specific "tier" of the drug and the method by which the drug was purchased.

The only evidence submitted by Pike purporting to prove that the overrides were improper is the testimony of a third party benefits consultant, George Goutanis, who states that after reviewing unspecified "relevant information" he concluded that Defendants improperly conducted overrides.  Further, he states that based upon his "extensive experience" in the field, "specialty drugs are always considered retail."  *See* Goutanis Decl.

at ¶¶ 9-10. Mr. Goutanis never references the Plan in his conclusions regarding Defendants actions. Additionally, there is nothing in the Plan itself to suggest that "specialty drugs" are considered retail even when they are received through a mail-order pharmacy. *See* Rider. Additionally, Mr. Goutanis states that "overrides are rarely done on an individual basis" and "are not done without the employer's knowledge and approval." Goutanis Decl. at ¶ 10. In this instance, the evidence indicates that the overrides conform a participant's copayment to the terms of the Plan. Under these circumstances, an override would necessarily be individual and there would be no reason to seek employer approval because the benefit would conform to the Plan terms already agreed to by the employer. Mr. Goutanis does not address the circumstances of this case specifically and without referencing the documents governing the Plan, bases his vague conclusions on generalities. Accordingly, Mr. Goutanis's conclusions are not sufficient to prevent summary judgment. *See Bourke v. Conger*, 639 F.3d 344, 347-48 (7th Cir. 2011) (noting that in order for an expert report to create a genuine issue of fact, "it must provide not merely . . . conclusions, but the basis for the conclusions"); *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 658 (7th Cir. 1998) ("[A]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").

Finally, Pike asserts that Defendants did not put forth any evidence that the overrides they made were in regard to transactions from in network pharmacies and involved drugs that were on the prescription drug list. Although Pike does not specifically spell out the import of this allegation, the Court presumes Pike is troubled by the notion of Defendants allegedly providing benefits for out-of-network pharmacies or non-listed drugs, because those benefits would be outside the scope of the Plan. As discussed above, Ms.

Byerly's declaration establishes that the overrides were made in conformity with the Plan. Pike did not allege in its Complaint or in its declarations that Defendants provided in-network benefits to individuals who received medications out-of-network or that Defendants extended coverage to drugs that were not listed on the prescription drug list, and it may not attempt to amend its Complaint through its response to Defendants' Motion for Summary Judgment to encompass these allegations. Pike has offered no evidence that Defendants violated the terms of the Plan in this way and it failed to allege that Defendants did so in its Complaint. Instead, it alleged that ASC did not subject specialty drugs to a retail-only copayment. If Pike wishes to change its allegations in this manner, it must amend its Complaint as fraud must be pleaded with specificity. *See* Fed. R. Civ. P. 9(b); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (stating that in a civil RICO complaint, the plaintiff must provide notice to defendants of their purported role in the scheme and "at minimum, describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud'"). The Court notes that the time allotted by the Federal Rules of Civil Procedure for amending the complaint as a matter of course has long since expired. Fed. R. Civ. P. 15(a).

## IV. CONCLUSION

For the foregoing reasons the Court concludes that Defendants sufficiently supported their position that Pike will be unable to prove the allegations it made in its complaint. Further, the Court concludes that Pike has not presented evidence to indicating that there is a genuine question as to the existence of any wrongdoing by Defendants.

11

Accordingly, the Court **GRANTS** Defendants Motion for Summary Judgment [dkt. no. 21].

See *Ortiz*, 94 F.3d at 1124. Judgement shall enter accordingly.

IT IS SO ORDERED this 23rd day of January, 2012.

> LARRY J. McKINNEY, JUDGE
> United States District Court
> Southern District of Indiana

Distribution to:

Jason Thomas Clagg
BARNES & THORNBURG
jason.clagg@btlaw.com

Jeremiah A. Collins
BREDHOFF & KAISER P.L.L.C.
805 15th Street, N.W., Suite 1000
Washington, DC 20005

William T. Hopkins Jr.
BARNES & THORNBURG
tuck.hopkins@btlaw.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

Alice McKenzie Morical
HOOVER HULL LLP
amorical@hooverhull.com

Daniel Zibel
BREDHOFF & KAISER, P.L.L.C.
805 15th St., N.W. Suite 1000
Washington, DC 20005